**DAY PITNEY LLP**
Michael J. Fitzpatrick (079922013)
1 Jefferson Road
Parsippany, New Jersey 07054-2891
(973) 966-8149
mfitzpatrick@daypitney.com
Attorneys For Plaintiff
Hartford Casualty Insurance Company

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| | : |
| HARTFORD CASUALTY INSURANCE | : **HONORABLE** |
| COMPANY, an Indiana Corporation, | : Civil Action No. |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **COMPLAINT AND DEMAND FOR** |
| | **JURY TRIAL** |
| LIBERTY MUTUAL FIRE INSURANCE | : |
| COMPANY, a Wisconsin Corporation | : |
| | : |
| Defendant. | : |
| | : |

Plaintiff, Hartford Casualty Insurance Company (hereinafter referred to as "Hartford"), located at One Hartford Plaza, Hartford, Connecticut 06115, by and through its counsel Day Pitney LLP, by way of complaint against defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), located at 175 Berkeley Street, Boston, Massachusetts 02116, states as follows:

## NATURE OF THE ACTION

1.      Hartford files this action seeking damages caused by Liberty Mutual in its defense of a personal injury lawsuit filed in New Jersey and brought against certain defendants, including WB Mason Company, Inc. ("WB Mason"), the named insured under a primary insurance policy issued by Liberty Mutual, and an umbrella policy issued by Hartford.

2.      Hartford seeks damages in excess of $630,031.93, which includes the amount paid by Hartford to satisfy a judgment entered by the New Jersey Superior Court in the above-referenced personal injury lawsuit, which judgment exceeded the limit of Liberty Mutual's primary policy.

## THE PARTIES

3.      At all times material hereto, plaintiff Hartford was and is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut.  Hartford is licensed to do business in New Jersey.

4.      Upon information and belief, defendant Liberty Mutual is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Boston, Massachusetts. Liberty Mutual is licensed to do business in New Jersey.

## JURISDICTION AND VENUE

5.      This Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the opposing parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

6.      This Court has personal jurisdiction over Liberty Mutual because the events that gave rise to Hartford's claims against Liberty Mutual occurred during Liberty Mutual's defense of a lawsuit filed in Middlesex County, New Jersey.

7.      Venue is properly laid before this Court under 28 U.S.C. § 1391(a) and 1391(b) because the Williams Action (defined below) that gave rise to the dispute between the parties was filed and tried to a judgment in the New Jersey Superior Court, Law Division in Middlesex County, New Jersey.

## THE WILLIAMS ACTION

8.      WB Mason was named as a defendant in a civil action filed in the New Jersey Superior Court, Law Division, Middlesex County captioned as <u>Rosemarie A. Williams v. James W. Kerr, et al.</u>, Docket No. MID-L-7337-12 ("the Williams Action").

9.      Plaintiff in the Williams Action alleged that on December 15, 2010, a commercial vehicle owned and controlled by WB Mason, and driven by WB Mason employee James W. Kerr, ran a red light and struck her motor vehicle, causing permanent injury to the plaintiff.

10.     Plaintiff filed suit against Kerr and WB Mason on November 5, 2012, seeking compensatory damages, including pain and suffering damages, past and future medical expenses, past and future lost income, interest, and costs of suit.

## DEFENSE OF THE WILLIAMS ACTION BY LIBERTY MUTUAL

11.     Liberty Mutual issued Commercial Auto Liability Policy No. 2611260490010 to WB Mason, for the policy period September 30, 2010 to September 30, 2011 (the "Liberty Mutual Policy").

12.     Upon information and belief, the Liberty Mutual Policy has a stated primary liability limit of $1,000,000 per occurrence, and provides a defense outside the limit to WB Mason.

13.     Hartford issued Umbrella Policy No. 08 RHU TD7255 K1 to WB Mason, for the policy period September 30, 2010 to September 30, 2011 ("the Hartford Policy").

14.     The Hartford Policy has a per occurrence limit of $3 Million, and attaches to pay losses in excess of the limits of the underlying primary policies, including the Liberty Mutual Policy.

15.     Liberty Mutual assumed the defense of WB Mason in the Williams Action, and provided that defense through trial and final judgment.

16.     As the excess insurer, Hartford monitored the defense of the Williams Action.

17.     On or about October 28, 2015, less than seven weeks before the then-scheduled date for trial, defense counsel retained by Liberty Mutual forwarded his final pre-trial report in the Williams Action to Liberty Mutual's adjuster ("the Final Pre-Trial Report").

18.     The Final Pre-Trial Report states, under the heading "Trial Strategy," that "settlement has been deemed the preferred route."  In addition, the Final Pre-Trial Report states that there was "no realistic defense on liability," the chance of a defense verdict was "nil" and the estimated comparative negligence of other parties was "none."  It also concludes that there is "no realistic defense on liability, in fact, we stipulated negligence."

19.      In his Final Pre-Trial Report, defense counsel predicts a range of likely damage awards from $400,000 to $1.5 million, with a "likely value" of $800,000. Defense counsel further opines, as to the insured's liability, that "liability is a non-starter for us," and notes several weaknesses in the case, including the venue: "Middlesex County is notorious for high verdicts."

20.     Liberty Mutual did not provide defense counsel's Final Pre-Trial Report to Hartford until May 2016, after jury selection in the trial of the Williams Action had been completed.

21.     On November 23, 2015, Plaintiff's attorney in the Williams Action informed the Liberty Mutual and Hartford adjusters that Plaintiff's demand to settle the action would be within Liberty Mutual's $1 million policy limits.

22.     On December 4, 2015, Hartford's adjuster wrote to Liberty Mutual: "[I]t has been confirmed that [Plaintiff's] demand to settle this matter is within your $1,000,000 coverage.  You are proceeding with mediation in an attempt to resolve this matter … Please accept this as notice that we expect Liberty Mutual Insurance to settle the matter within your policy limits… In the event you are unable to resolve this matter and there is a trial verdict in excess of your limits, Liberty Mutual will be responsible for this excess claim."

23.     On or about December 10, 2015, a mediation was held in the Williams Action.  Plaintiff demanded $750,000 to settle the case.  Liberty Mutual failed to settle, and instead, offered only $250,000, despite the fact that Plaintiff's demand was less than defense counsel's assessment of the likely $800,000 value of the case.

24.     On December 14, 2015, Liberty Mutual's adjuster wrote an email to Hartford's adjuster reporting on the mediation, and stating: "None of us want to go to trial on this case but if plaintiff won't come below 750K we will likely move forward with trial. … [W]e do not pay cases at our limits to satisfy an excess carrier when the factual merits of the case do not support a payout at the current demand of $750,000. I will continue to provide you with status updates."

25.     In her email of December 14, 2015, Liberty Mutual's adjuster made no mention of defense counsel's Final Pre-Trial Report.

26.     The Williams Action was tried to a jury in May 2016. At trial, the defense conceded liability and waived the defense of comparative negligence.  Liberty Mutual offered

$600,000 to settle before trial, without success. Liberty Mutual never offered its $1 million policy limits to settle the case.

27. The trial ended in a verdict for the Plaintiff and against WB Mason in the amount of $1.4 million, allocated as follows: $350,000 for pain and suffering, $150,000 for wage loss, and $900,000 for a life care plan for the Plaintiff.

28. On November 14, 2016, the Court denied Liberty Mutual's post-trial motion to set aside the verdict. Final judgment entered on December 22, 2016.

29. In February 2017, Liberty Mutual paid $937,749.71 towards the final judgment in the Williams Action.

30. In February 2017, Hartford paid the remainder of the judgment, $495,462.89 (including $32,842.35 in prejudgment interest), thereby fully satisfying the final judgment that was entered in the Williams Action against Hartford's insured, WB Mason. Since that time, Hartford has paid additional expenses that bring its current loss in the Williams Action to $630,031.93.

## CLAIMS FOR RELIEF

## FIRST COUNT

### (Bad Faith Failure to Settle)

31. Hartford repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 30 of the Complaint.

32. Liberty Mutual had a duty to Hartford to negotiate in good faith and settle the Williams Action within the $1 million limit of the Liberty Mutual Policy.

33. In December 2015, Plaintiff in the Williams Action offered to settle the underlying case for $750,000.

34. Liberty Mutual did not dispute the liability of the insured, WB Mason, in

the underlying action.

35.     Liberty Mutual had a clear opportunity to settle the Williams Action for $750,000 in December 2015.

36.     The Plaintiff's $750,000 settlement demand was reasonable, within the Liberty Mutual Policy limit, and within the range of damages estimated by defense counsel retained by Liberty Mutual in his Final Pre-Trial Report.

37.     Liberty Mutual did not settle the underlying case for $750,000.

38.     Liberty Mutual did not settle the underlying case for any amount within its $1 million policy limit.

39.     Liberty Mutual elected to bring the underlying case to trial knowing that by proceeding to trial, it was exposing Hartford to liability in excess of the $1 million limit of Liberty Mutual's primary policy.

40.     The trial of the underlying case resulted in a Plaintiff's verdict in the amount of $1.4 million.

41.     The $1.4 million verdict referenced in Paragraph 40 of this Complaint amounted to more than the full limit of the Liberty Mutual Policy.

42.     By failing to settle the case within its $1 million policy limit, and by electing to bring the underlying case to trial, Liberty Mutual placed its own pecuniary interests ahead of Hartford's.

43.     Liberty Mutual acted unreasonably and in bad faith, and therefore must reimburse Hartford for the money Hartford had to pay to satisfy the judgment entered against its insured, WB Mason, in the Williams Action.

**WHEREFORE**, Hartford respectfully demands judgment against Liberty Mutual in an amount in excess of $630,031.93, plus interest, attorney fees and such other relief as is just.

## SECOND COUNT

### (Equitable Subrogation)

44.     Hartford repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 43 of the Complaint.

45.     By reason of its payment of $630,031.93 on behalf of its insured, WB Mason, Hartford is equitably subrogated to the rights of WB Mason.

46.     Liberty Mutual had a duty to WB Mason, and hence to Hartford, to negotiate in good faith and settle the Williams Action within the $1 million limit of its Policy.

47.     Liberty Mutual's refusal to settle the Williams Action exposed Hartford to an excess verdict, and required Hartford to pay amounts that should have been paid by Liberty Mutual to settle the Williams Action.

48.     By its actions, Liberty Mutual acted unreasonably and in bad faith, and therefore must reimburse Hartford for the money Hartford had to pay to satisfy the judgment against its insured WB Mason in the Williams Action.

**WHEREFORE**, Hartford respectfully demands judgment against Liberty Mutual in an amount in excess of $630,031.93, plus interest, attorney fees and such other relief as is just.

s/ Michael J. Fitzpatrick
Michael J. Fitzpatrick (079922013)
DAY PITNEY LLP
1 Jefferson Road
Parsippany, NJ 07054
(973) 966-8121
mfitzpatrick@daypitney.com

Attorneys for Plaintiff
Hartford Casualty Insurance Company

Dated: January 11, 2018

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

s/ Michael J. Fitzpatrick
Michael J. Fitzpatrick (079922013)
DAY PITNEY LLP
1 Jefferson Road
Parsippany, NJ 07054
(973) 966-8121
mfitzpatrick@daypitney.com

Attorneys for Plaintiff
Hartford Casualty Insurance Company

Dated: January 11, 2018

## <u>JURY DEMAND PURSUANT TO FED. R. CIV. P. 38(b)</u>

Plaintiff Hartford Casualty Insurance Company hereby demands trial by jury.


<u>s/ Michael J. Fitzpatrick</u>
Michael J. Fitzpatrick (079922013)
DAY PITNEY LLP
1 Jefferson Road
Parsippany, NJ 07054
(973) 966-8121
mfitzpatrick@daypitney.com

Attorneys for Plaintiff
Hartford Casualty Insurance Company


Dated: January 11, 2018